[No. 3611.    Decided December 8, 1900.]

JOHN H. GRIFFITH *et al., Respondents,* v. NATHAN B. RUNDLE *et al., Appellants.*

PRINCIPAL AND SURETY—LIABILITY OF SURETIES—GOVERNMENT CONTRACT—PROTECTION OF MATERIAL MEN AND LABORERS.

Where a bond has been given by a contractor engaged in the construction of a public work for the United States, in accordance with the provisions of the act of Congress of August 13, 1894, entitled "An act for the protection of persons furnishing materials and labor for the construction of public works," parties who supplied the contractor with materials or labor have a right of action on the bond against the sureties, irrespective of any right of the government under the bond, although the sureties may have undertaken the contract after its abandonment by their principal and may have expended in its completion, in excess of the contract price, a sum amounting to more than the penal obligation of the bond.

Appeal from Superior Court, Spokane County.—Hon. THOMAS H. BRENTS, Judge. Affirmed.

*Henley, Kellam & Lindsley* and *A. G. Avery,* for appellants.

*Lewis & Lewis,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—In July, 1897, defendant Rundle entered into a contract with the United States for the construction of certain buildings at the army post near Spokane. At the time the contract was executed, a bond was duly executed in accordance with the provisions of the act of Congress approved August 13, 1894 (28 Stat. at Large, 278). The law is entitled, "An act for the protection of persons furnishing materials and labor for the construction of public works." Its provisions are substantially that any person entering into a formal contract with the United States for the construction of any public building shall be required, before commencing, to execute the usual penal bond with good and sufficient sureties, with the additional obligations that the contractor shall promptly make payments to all persons supplying him labor and materials in the prosecution of the work provided for in the contract; that any persons performing labor or furnishing materials for such work shall be furnished on application with a certified copy of the contract and bond upon which the person supplying labor and materials shall have a right of action, and be authorized to bring suit in the name of the United States against the contractor and sureties, provided that such action shall involve the United States in no expense. The defendants Henley and Snodgrass were sureties upon the bond, the penal sum of which was $10,000. While the contractor, Rundle, was engaged in the construction of the buildings

under his contract, materials were furnished by plaintiffs to the contractor and used by him in the work of construction. Subsequently, and while the buildings were but partially completed, the United States, in the exercise of the right reserved in the contract, took the work out of the hands of Rundle and at the same time notified the sureties, Henley and Snodgrass, of its action. Thereupon the sureties took up the work of construction and completed the buildings according to Rundle's contract, and the United States accepted their work as full performance of the contract. For defense to the action, after some denials, the sureties set up the fact that Rundle did not complete the contract, but the sureties, under its terms, made full performance, which was duly accepted by the United States, and that in their completion of the contract they were necessarily compelled to expend sums in excess of $10,000, the amount of the penalty in the bond.

1. The several assignments of error made by the appellants may be grouped together and stated as the refusal of the superior court to admit testimony under the affirmative defense set forth in the answer. The court excluded any evidence with reference to the United States having demanded of the sureties the performance of the contract or the payment of damages. It is maintained by counsel for appellants that the limit of the liability of the sureties was the penalty stated in the bond, $10,000; that, if the sureties had not undertaken the performance of the contract of their principal, the entire damages to both the government and the respondents and all of the other claimants for labor and materials would have been liquidated by the payment of $10,000; that the fact that the sureties necessarily expended more than that sum in the completion of the contract, and over the contract price, relieves them from further liability. It is also main-

tained that, if the contract had not been completed, the
government is a preferred creditor and its claim would
exhaust the penalty, and there would be no funds left for
the satisfaction of plaintiffs and other claimants of like
character; and counsel maintain that it is necessary to de-
termine the question of priority of rights as between the
government and these claimants. In a case involving
these facts (*United States v. Rundle*), in the United
States circuit court, judgment was entered in conformity
with the contention of counsel here. But the cause was
afterwards reversed by the United States circuit court of
appeals (100 Fed. 400), and the appellate court ob-
served:

"The undisputed facts of the present case are such that
it is not necessary to consider the question presented in
the court below, and argued here, whether, if the United
States had any cause of action upon the bond in suit, its
claim should be preferred to that of the laborers and ma-
terial men; for, as has already been observed, the United
States received full performance of the contract, and
therefore has no cause of complaint."

In the case of *United States v. National Surety Co.,*
92 Fed. 549, such a bond was under consideration by the
court, and it was there adjudged that the bond was in-
tended to perform a double function: First, to secure
the faithful performance of the contract to the govern-
ment; and, second, to protect third persons from whom
the contractor might obtain labor or materials in the
prosecution of the work. In its second aspect, the bond,
by virtue of the statute, contains a separate and distinct
agreement between the obligors and such third persons,
as to which the agency of the government ceases when the
bond is given and approved, and subsequent changes in
the contract, agreed upon between the government and the
contractor, though without the knowledge or consent of

the surety, will not release the surety from liability to persons who supply labor or materials thereunder. The court observed of the statute under which the bond is executed:

"It is also noticeable that in its title the act professes to be one for the benefit 'of persons furnishing materials and labor,' and that in the body of the act the form of the condition to be inserted in the bond for the benefit of the United States is not in terms prescribed, the only provision in that regard being that the bond shall be 'the usual penal bond'; meaning, evidently, such an obligation for the government's own protection as it had long been in the habit of exacting from those with whom contracts were made for the doing of public work. On the other hand, the condition for the benefit of persons who might furnish materials or labor is carefully prescribed. Obviously, therefore, congress intended to afford full protection to all persons who supplied materials or labor in the construction of public buildings or other public works, inasmuch as such persons could claim no lien thereon, whatever the local law might be, for the materials so supplied. There was no occasion for legislation on the subject to which the act relates, except for the protection of those who might furnish materials or labor to persons having contracts with the government. * * * Viewed in its latter aspect, the bond, by virtue of the operation of the statute, contains an agreement between the obligors therein and such third parties that they shall be paid for whatever labor or materials they may supply to enable the principal in the bond to execute his contract with the United States. The two agreements which the bond contains, the one for the benefit of the government, and the one for the benefit of third persons, are as distinct as if they were contained in separate instruments, the government's name being used as obligee in the latter agreement merely as a matter of convenience."

In the case of *Dewey v. State ex rel. McCollum,* 91 Ind. 173, it was substantially held that for any breach of the second condition of such a bond by the contractor the

right of action was in the laborer or the material man, and that such right of action could not be defeated or abridged by any act done by the obligee in the bond after the bond had been taken and approved; and it was ruled that changes made in the contract by the parties thereto, —that is, the contractor and the public authorities,— after the bonds had been accepted, would not deprive material men of their rights to recover against sureties in the bond. To the same effect is *Conn v. State ex rel. Stutsman,* 125 Ind. 514 (25 N. E. 443); and the same principle is affirmed in *Doll v. Crume,* 41 Neb. 655 (59 N. W. 806); *Kaufmann v. Cooper,* 46 Neb. 644 (65 N. W. 796); *Steffes v. Lemke,* 40 Minn. 27 (41 N. W. 302).

The practical effect of the statute, and others of similar character in a number of the states, seems to be to confer a special lien in favor of such persons who furnish labor and material, and to substitute the bond in place of the public building as a thing upon which the lien is to be charged. Such liens evidently appear, from an inspection of the current legislation, to be favored, and the courts have usually adopted a liberal rule of construction in their enforcement.

2. It is pertinent to suggest that in the performance of the unfinished contract by the sureties, if they had expended less than the amount to be paid by the government on the completion of the contract, the excess or profit would have belonged to them, and, if they undertook the completion of the contract and sustained a loss, it would seem that it should fall upon them. As sureties under the terms of the contract, they might elect to complete it upon default of their principal, but such completion was not the full performance of the contract by the principal himself. It satisfied the sureties' contract with the government, but, as observed by the circuit court of appeals

in *United States v. Rundle, supra,* the United States is
not a claimant here, and the question of priority of claims
to the amount due from the sureties under the terms of
the bond is not involved in this case.

The judgment of the superior court must be affirmed.

DUNBAR, C. J., and FULLERTON and ANDERS, JJ.,
concur.